UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| DARIUS PRINTUP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:22-cv-00309-JPH-MJD |
| | ) | |
| M. SMITH, JR., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING IN PART, DENYING IN PART
STATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Darius Printup is an inmate at Westville Correctional Facility.  He was

previously incarcerated at Wabash Valley Correctional Facility, and he alleges

that during his time at Wabash Valley, prison guards used excessive force

against him, other guards were deliberately indifferent to the use of excessive

force, and a nurse failed to treat his injuries.  The prison officials have moved

for summary judgment, and the motion is fully briefed.  For the reasons below,

that motion, dkt. [72], is **DENIED** as to the claim against Officer Smith and

otherwise **GRANTED**.

### I.      Summary Judgment Standard

Summary judgment should be granted "if the movant shows that there is

no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a).  Once the moving party has

met its burden, "the burden shifts to the non-moving party to come forward

with specific facts showing that there is a genuine issue for trial." *Spierer v.

Rossman*, 798 F.3d 502, 507 (7th Cir. 2015).  A disputed fact is material if it

1

might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941–42 (7th Cir. 2016). "A genuine dispute as to any material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page*, 906 F.3d 606, 609–10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Valenti v. Lawson*, 889 F.3d 427, 429 (7th Cir. 2018). Ordinarily, the Court cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). There are, however, exceptions to this rule, including: (1) "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007); and (2) "where a reliable videotape clearly captures an event in dispute and blatantly contradicts one party's version of the event so that no reasonable jury could credit that party's story, a court should not adopt that party's version of the facts for the purpose of ruling on a motion for summary judgment." *McCottrell v. White*, 933 F.3d 651, 661 n.9 (7th Cir. 2019) (citing *Scott*, 550 U.S. at 380–81).

## II.       Relevant Facts

### A.       Parties

At all times relevant to the allegations in the Complaint, Mr. Printup was incarcerated at Wabash Valley and Officer Smith, Officer Wainman, Officer Jobe, Sergeant Martinez, Lieutenant Holcomb, and Warden Vanihel ("the State Defendants") were employed by the Indiana Department of Correction and worked at Wabash Valley.[1]

### B.       OC spray incident

On May 12, 2022, Mr. Printup was involved in a dispute with Officer Smith regarding the confiscation of property.  Dkt. 93-1 at 10 (Printup Dep. 8:11–15).  Mr. Printup wanted to speak to a higher-ranking official, but Officer Smith denied his requests.  *Id.*  Mr. Printup refused to remove his hand from his cuff port, preventing Officer Smith from closing and locking it as he normally would.  *Id.* at 14–15 (Printup Dep. 12:15–13:16).  Officer Smith ordered Mr. Printup "once or twice" to remove his hand from the cuff port. *Id.* at 15–16 (Printup Dep. 13:18–14:7–11).  Mr. Printup refused to do so unless Officer Smith called for a higher-ranking staff member.  *Id.*

Officer Smith then sprayed Mr. Printup's hand with oleoresin capsicum ("OC spray").  *Id.* at 17 (Printup Dep. 15:4–9).  Officer Smith then pointed the OC spray canister toward Mr. Printup's face.  *Id.*  According to Mr. Printup, Officer Smith sprayed him continuously for approximately 14 or 15 seconds.

---

[1] The medical staff who are named as defendants have filed a separate motion for summary judgment, dkt. 67, so they are not discussed here.

*Id.* (Printup Dep. 15:8–24).  In contrast, Officer Smith states that he sprayed

Mr. Printup with two short bursts, not one continuous spray.  Dkt. 73-2,

¶¶ 10–12.  The incident was captured on video that clearly shows Officer Smith

pointing the OC spray canister at Mr. Printup for about 15 seconds.  *See*

dkt. 73-1 at 1:12–1:29.[2]  But it's not possible to discern from the video whether

Officer Smith was spraying the OC that entire time, or if he only sprayed two

short bursts.

Mr. Printup testified that he did not react when Officer Smith sprayed his

hand, but when the spray was directed toward his face, he covered his face and

turned away from the door.  Dkt. 93-1 at 17 (Printup Dep. 15:17–20).

Mr. Printup further testified that at that time, he experienced choking,

coughing, burning, and blindness.  *Id.* at 18 (Printup Dep. 16:3–6).  The video,

however, shows that Mr. Printup did not move away from the door but

continued resting his hand on the cuff port from the moment Officer Smith

unholstered the OC spray until he reholstered it.  Dkt. 73-1 at 1:12–1:29.

### C.    Decontamination shower

After deploying the OC spray, Officer Smith called for support.

Approximately two minutes after Mr. Printup was sprayed, Officer Wainman,

Officer Jobe, and Sergeant Martinez arrived.  Dkt. 73-1 at 1:14–3:30.  Officer

Smith left after the first other staff member arrived.  *Id.* at 2:20–2:30.  Within

---

[2] Defendants submitted two version of the video: the "original" version and another version in AVI format in compliance with this Court's local rules.  *See* S.D. Ind. L.R. 5-2(c) ("Video, audio, and similar files must be presented in MP4, WMV, MOV, or AVI format.").  The Court has reviewed only the AVI version filed in compliance with the Court's Local Rules.

five minutes after the spraying incident, Officer Wainman, Officer Jobe, and

Sergeant Martinez escorted Mr. Printup to the shower for decontamination.

*Id.* at 5:25–5:33.

During the escort, Mr. Printup was handcuffed, and the officers held a

lead rope attached to the handcuffs. *Id.* Mr. Printup had undressed in his cell,

so he was wearing only boxers. *Id.* The officers did not remove the lead or the

handcuffs after Mr. Printup entered the shower. *Id.* at 5:33–5:40. Mr. Printup

put his arms through the shower cuff port and requested to be uncuffed.

Dkt. 93-1 at 22 (Printup Dep. 20:6–14). The officers, however, did not uncuff

him. *Id.*

Mr. Printup testified that he then "tr[ied] to maneuver [his] hands around

to the side so [he] can like get the bar of soap on the shelf." *Id.* at 23 (Printup

Dep. 21:10–15); *see also* dkt. 93 at 8 (Mr. Printup asserting under penalty of

perjury that he "only grabbed the lead strap after Wainman and Jobe caused

injury to his shoulder by yanking the lead strap."). However, the video shows

that as soon as Mr. Printup pulled his hands into the shower cell, he grabbed

at the lead strap attached to his handcuffs. Dkt. 73-1 at 5:42–5:44. The

officers then pulled his arms back through the cuff port using the lead strap.

*Id.* at 5:44–5:45.

Mr. Printup testified that the officers then "kept pulling the lead strap."

Dkt. 93-1 at 23 (Printup Dep. 21:22–23). He also reports that his shoulder was

injured when the officers yanked on the lead strap while he was in the shower.

Dkt. 93 at 8. But the video shows that the officers held the lead strap in place

while Mr. Printup twisted his body and pulled the strap.  Dkt. 73-1 at

5:45–6:16.  The officers then ended the shower and escorted Mr. Printup to a

holding cell where he was visited by a nurse.  *Id.* at 6:15–6:42; dkt. 93-1 at

26–27 (Printup Dep. 24:20–25:4).

Mr. Printup testified that as he exited the shower, "immediately [the

officers] kind of put [him] in an arm bar," and he protested in pain.  Dkt. 93-1

at 26 (Printup Dep. 24:20–23).  The video shows that during the escort, Officer

Jobe held one of Mr. Printup's upper arms and Officer Wainman held the other.

Dkt. 73-1 at 6:19–6:42.  As they descended the stairs, one of the officers looped

his arm under Mr. Printup's upper arm.  *Id.* at 6:30–6:36.  The officer then

returned to using his hand to hold Mr. Printup's upper arm.  *Id.* at 6:36–6:42.

Mr. Printup testified that he had a "visible limp in [his] walk" during the

escort, "which was caused by the officers applying pressure."  Dkt. 93 at 8.

The Court has reviewed the video multiple times and did not observe any limp.

Dkt. 73-1 at 6:19–6:42.  Indeed, throughout the escort, Mr. Printup shows no

indication of being in pain.  *Id.*

### D.    Grievance

Mr. Printup filed a grievance and grievance appeal about the use of OC

spray and the events in his decontamination shower.  Dkt. 93-1 at 52–57.  He

contends that Warden Vanihel and Lieutenant Holcomb failed to investigate his

allegations and relied on falsified reports to deny the grievance and appeal.

Dkt. 93 at 9.

### III.   Discussion

### A.   Excessive Force

Officers Smith, Wainman, and Jobe argue that the amount of force used was reasonable under the circumstances, so they are entitled to summary judgment.

The Eighth Amendment protects inmates from cruel and unusual punishment, including excessive force by prison officials. *McCottrell*, 933 F.3d at 662. Reasonable force is permissible if used "in a good-faith effort to maintain or restore discipline." *McCottrell*, 933 F.3d at 664 (cleaned up). But malicious or sadistic force—even if it does not cause a serious injury—is prohibited. *Id.* To distinguish between good-faith and malicious force, courts consider several factors, including:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.

*Id.* at 663; *see also Whitley v. Albers*, 475 U.S. 312, 321 (1986). These factors are sometimes referred to as the "*Whitley* factors." Additionally, to survive summary judgment, a plaintiff must present evidence supporting "a reliable inference of wantonness in the infliction of pain." *Whitley*, 475 U.S. at 322.

### 1.   Officer Smith's use of OC spray

Officers may use "mace, tear gas or other chemical agent of the like nature when reasonably necessary to prevent riots or escape or to subdue

7

recalcitrant prisoners."  *Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984).

For example, a prison officer may use small amounts of OC spray to compel a

disobedient prisoner to leave a cell.  *Id.*; *see also Rice ex rel. Rice v. Corr. Med.*

*Servs.*, 675 F.3d 650, 668 (7th Cir. 2012) (where prisoner had hit his cellmate

and refused to comply with order to leave cell, use of OC spray was justifiable).

However, "such justification does not necessarily exist every time an inmate is

slow to comply with an order."  *Lewis v. Downey*, 581 F.3d 467, 477 (7th Cir.

2009).

Here, accepting Mr. Printup's testimony to the extent it's not plainly

contradicted by the video, Officer Smith directed him one time to remove his

hand from the cuff port and then, without warning, sprayed him in the face

with OC spray for between 10 and 15 seconds.  Dkt. 93-1 at 16–17 (Printup

Dep. 14:7–15:22).  Officer Smith offers a different version of what happened.

*See* dkt. 73-2, ¶ 8 ("I gave Plaintiff multiple orders to remove his hands from

the cuffport so that I could secure it, but Plaintiff refused my orders."); *id.*, ¶¶

10–11 (Officer Smith stating that he applied only two one-second bursts of OC

spray, not a continuous 15 second spray).

From this designated evidence, a reasonable jury could find that the

need for the use of force was low, even though Mr. Printup was "slow to comply

with an order," *see Lewis*, 581 F.3d at 477, because there was no imminent

safety risk to prison staff, other inmates, or Mr. Printup himself.  A reasonable

jury could also find that Officer Smith did not warn Mr. Printup that he

intended to use OC spray if Mr. Printup did not comply.  And a reasonable jury

could conclude that Officer Smith's use of the OC spray was disproportionate

to Mr. Printup's conduct, not reasonable under the circumstances, and caused

him significant pain.  Officer Smith is therefore not entitled to summary

judgment as to the Eighth Amendment excessive force claim.

### 2.    Use of force during and after the decontamination shower

Mr. Printup's account of what happened during and after the

contamination shower differs substantially from that of Defendants Wainman,

Jobe, and Martinez.  The Court's evaluation of what happened is assisted by

the video.  Defendants' version of events is consistent with the video evidence

while Mr. Printup's is not, so the Court credits Defendants' version.  *Scott*, 550

U.S. at 380–81 (holding that a non-movant's account should not be adopted

over reliable videotapes contradicting it).

Mr. Printup testified that he "only grabbed the lead strap after Wainman

and Jobe caused injury to his shoulder by yanking the lead strap."  Dkt. 93

at 8.  But the video shows that as soon as Mr. Printup brought his hands into

the shower cell, he grabbed at the lead strap.  Dkt. 73-1 at 5:42–5:44.  After

Mr. Printup grabbed at the lead strap, the officers pulled it to bring

Mr. Printup's hands back through the cuff port.  *Id.* at 5:44–5:46.  Mr. Printup

further testified that the officers then "kept pulling the lead strap."  Dkt. 93-1

at 23 (Printup Dep. 21:22–23).  But the video shows that the officers merely

held the lead strap in place while Mr. Printup twisted his body and pulled the

strap.  Dkt. 73-1 at 5:45–6:16.

Finally, Mr. Printup testified that upon his exit from the shower, "immediately [the officers] kind of put [him] in an arm bar." Dkt. 93-1 at 26 (Printup Dep. 24:20–23). But the video shows that, except when descending the stairs, the officers merely held Mr. Printup's upper arms with their hands. Dkt. 73-1 at 6:19–6:42. As they descended the stairs, one of the officers looped his arm under Mr. Printup's upper arm. *Id.* at 6:30–6:36. The officer then returned to using his hand to hold Mr. Printup's upper arm. *Id.* at 6:36–6:42.

Considering Mr. Printup's testimony to the extent it is not directly contradicted by the video, there is no designated evidence from which a jury could find that the officers' use of force was malicious or sadistic. Instead, the force used was proportionate to Mr. Printup's conduct and reasonable under the circumstances. The need for force arose when Mr. Printup grabbed at the lead rope. In pulling Mr. Printup's hands back through the cuff port, the officers applied enough force to stop Mr. Printup's behavior but then reduced the amount of force to keep his hands in place. No reasonable jury could find that the amount of force used was unreasonable under the circumstances, so Officer Wainman, Officer Jobe, and Sergeant Martinez are entitled to summary judgment.

## B.  Failure to Intervene

A prison official may be liable for failure to intervene and protect an inmate from violence by another official if the defendant "had reason to know . . . that excessive force was being used [and] had a realistic opportunity to intervene to prevent the harm from occurring." *Doxtator v. O'Brien*, 39 F.4th

10

852, 864 (7th Cir. 2022) (quoting *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994)).

Here, Mr. Printup contends that Sergeant Martinez failed to intervene when Officer Wainman and Officer Jobe used excessive force against him during the decontamination shower and ensuing escort.  Dkt. 93 at 19–20.  But as the Court has already concluded, no reasonable jury could find that Mr. Printup was subject to excessive force during these events.  With no finding that Officers Wainman and Jobe used excessive force, Sergeant Martinez could not be liable for failure to intervene.  Accordingly, he is entitled to summary judgment on this claim.

### C.    Deliberate Indifference

Defendants Holcomb and Vanihel argue that they are entitled to summary judgment because they were not personally involved in the events underlying Mr. Printup's claims, and they were not deliberately indifferent to the use of excessive force.

"[P]ublic employees are responsible for their own misdeeds but not for anyone else's."  *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009).  A supervisor like Lieutenant Holcomb or Warden Vanihel may be held liable for the actions of a subordinate if "the supervisor played some role in the conduct through facilitation, approval, or turning a blind eye for fear of what they might see."  *Hess v. Garcia*, 72 F.4th 753, 768 (7th Cir. 2023) (cleaned up).

Mr. Printup points to his grievance and grievance appeal denials as evidence that Lieutenant Holcomb and Warden Vanihel turned a blind eye to

the alleged constitutional violations.  But "[r]uling against a prisoner on an administrative complaint does not cause or contribute to the violation.  A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not." *George v. Smith*, 507 F.3d 605, 609–10 (7th Cir. 2007).  Mr. Printup designates no evidence of any action—or knowing inaction—taken by Lieutenant Holcomb and Warden Vanihel that caused or contributed to the alleged use of excessive force by Officer Smith.  Lieutenant Holcomb and Warden Vanihel are therefore entitled to summary judgment.

## IV.   Conclusion

The State Defendants' motion for summary judgment, dkt. [72], is **DENIED** as to the Eighth Amendment excessive force claim against Officer Smith and otherwise **GRANTED**.

The **clerk is directed** to terminate Defendants C. Holcomb, J. Jobe, C. Martinez, F. Vanihel, and C. Wainman as defendants on the docket.

The Court will decide Defendants Centurion Health and Lauren Cupp's motion for summary judgment in a separate order.

**SO ORDERED.**

Date: 9/16/2024

*James Patrick Hanlon*

James Patrick Hanlon
United States District Judge
Southern District of Indiana

12

Distribution:

All ECF-registered counsel of record via email

DARIUS PRINTUP
280904
WESTVILLE - CF
WESTVILLE CORRECTIONAL FACILITY
Electronic Service Participant – Court Only