UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| DARIUS PRINTUP, | ) |
|        Plaintiff, | ) |
| v. | ) No. 2:22-cv-00309-JPH-MJD |
| M. SMITH, JR., et al., | ) |
|        Defendants. | ) |

**ORDER GRANTING IN PART, DENYING IN PART
MEDICAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Darius Printup is an inmate at Westville Correctional Facility. He was previously incarcerated at Wabash Valley Correctional Facility. He alleges that during his time at Wabash Valley, Defendant Nurse Cupp was deliberately indifferent to his shoulder pain and that Defendant Centurion Health maintained a widespread practice of ignoring healthcare requests from persons housed in the secure confinement unit ("SCU") at Wabash Valley. Nurse Cupp and Centurion ("the Medical Defendants") have moved for summary judgment. For the reasons below, the motion for summary judgment, dkt. [67], is **DENIED** as to the Eighth Amendment deliberate indifference claim against Nurse Cupp and **GRANTED** as to the Eighth Amendment claim against Centurion.

    **I.**    **Summary Judgment Standard**

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the moving party has met its burden, "the burden shifts to the non-moving party to come forward

1

with specific facts showing that there is a genuine issue for trial." *Spierer v. Rossman*, 798 F.3d 502, 507 (7th Cir. 2015). A disputed fact is material if it might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941–42 (7th Cir. 2016). "A genuine dispute as to any material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page*, 906 F.3d 606, 609–10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Valenti v. Lawson*, 889 F.3d 427, 429 (7th Cir. 2018). The Court cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014).

## II.  Relevant Facts

### A.  Parties

At all times relevant to the allegations in the Complaint, Mr. Printup was incarcerated at Wabash Valley, Centurion was a private company contracted to provided medical services to prisoners in the Indiana Department of Correction, and Nurse Cupp was a nurse employed by Centurion and working at Wabash Valley.

### B.  Mr. Printup's complaints of shoulder pain

In May 2022, Mr. Printup was in an altercation with prison officials. *See* dkt. 91 at 30 (Printup Dep. 26:14−20); *see also* dkt. 73-1 at 5:33−6:15 (video of

incident). He was seen by Nurse Cupp within minutes of the incident. Dkt. 91 at 31, 38 (Printup Dep. 27:8–13, 34:5–11). Mr. Printup told Nurse Cupp he was experiencing shoulder pain and thought that the shoulder was out of the socket. Dkt. 91 at 3. Nurse Cupp observed that Mr. Printup had "no visible shoulder deformity" and that his shoulder was moving up and down when he spoke. *Id.* She also noted there were no marks on Mr. Printup's wrists from handcuffs being pulled. *Id.*

Mr. Printup had difficulty sleeping on the night of the incident due to shoulder pain. Dkt. 2 at 17 ¶ 71 (verified complaint).

During the next few days, Mr. Printup asked Nurse Cupp on multiple occasions for pain medication, but she refused to give him any. *Id.* at 17 ¶¶ 71–75. Specifically, he hand-delivered a healthcare request form to Nurse Cupp on May 13, 2022, complaining about shoulder pain and requesting Tylenol. Dkt. 90 at 3 (verified response to Defendants' motion for summary judgment). He then submitted a second healthcare request form regarding shoulder pain to Nurse Cupp "within a few days." *Id.*

Mr. Printup attests that he "continued to experience excruciating pain in his right shoulder, had trouble sleeping, and was affected in his attempts to perform his daily activities such as going to showers, recreation, etc., for two weeks after the incidents that occurred on May 12, 2024 [sic][1]." Dkt. 90 at 4 ¶ 4 (verified response to Defendants' motion for summary judgment). He

---

[1] Given the context, the Court assumes that Mr. Printup's reference here to 2024 was an error and he meant to reference 2022.

similarly attested that "[f]or at least the next week or two, [he] remained in agonizing pain and was not seen by medical personnel despite submitting multiple HCR Forms."  Dkt. 2 at 17 ¶ 73.

On May 18, 2022, Mr. Printup submitted a grievance regarding lack of medical care.  Dkt. 91 at 42.  That grievance was returned as duplicative by a grievance specialist.  *Id.* at 43.  Mr. Printup never received treatment for the shoulder pain that persisted for two weeks after the incident.  Dkt. 90 at 4.

**C.     Centurion's treatment of persons housed in the SCU**

Mr. Printup asserts that he and other individuals have been denied appropriate medical care on multiple occasions while housed in Wabash Valley's SCU.  Dkt. 90 at 5–8.

First, after hitting his head on the sink in his cell in July 2021, he was not seen by a doctor for 22 days.  Dkt. 90 at 5–6.  Next, he made multiple requests for mental health treatment in June and July 2022, but the mental health provider did not see him.  *Id.* at 7.  When he was scheduled for an appointment on August 2, 2022, the provider refused to see him because he was not wearing the proper uniform.  *Id.* at 7–8.  Finally, Mr. Printup designates as evidence a one-page statement and series of healthcare request forms from Rafael Walker, who was also housed in Wabash Valley's SCU, alleging that Mr. Walker "experienced the same issues."  Dkt. 90 at 8; *see* dkt. 54 at 5–22.

Centurion has designated as evidence Mr. Printup's medical records from June 2021 through September 2022.  Dkt. 68-2.  The records show that from

4

July 1, 2021, when Centurion became the medical provider, through September 20, 2022, Mr. Printup was seen by a nurse or doctor on 12 occasions for a variety of reported ailments.  *Id.* at 4 (July 4, 2021 – lightheadedness, dizziness, fatigue); *id.* at 6 (July 8, 2021 – same); *id.* at 9 (July 30, 2021 – same, plus Covid-19 and a rash); *id.* at 13 (August 11, 2021 – lightheadedness, dizziness, and headaches); *id.* at 16 (October 7, 2021 – requesting eye exam and new glasses); *id.* at 19 (October 25, 2021 – sore throat); *id.* at 22 (December 23, 2021 – "scabs on body"); *id.* at 25 (February 13, 2022 – Covid-19); *id.* at 32 (July 12, 2022 – "skin deficiency on [] leg"); *id.* at 39 (September 9, 2022 – dizziness, hunger pains); *id.* at 41 (September 10, 2022 – blood pressure check); *id.* at 43 (September 20, 2022 – blood pressure check).  Mr. Printup reports that these medical records are incomplete and should include EKG results, lab results, and x-ray results. Dkt. 90 at 5.

### III.  Discussion

The Court addresses Mr. Printup's claims against Nurse Cupp and Centurion in turn.

#### A.  Nurse Cupp

Defendants argue Nurse Cupp is entitled to summary judgment because Mr. Printup has not designated evidence that he suffered a serious shoulder injury.  Dkt. 69 at 10–12.

"Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical

5

need." *Thomas v. Blackard*, 2 F.4th 716, 721–22 (7th Cir. 2021).  To prevail on a deliberate indifference claim, "a plaintiff must show (1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent."  *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (cleaned up).  "A delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain."  *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011); *see Dobbey v. Mitchell-Lawshea*, 806 F.3d 938, 941 (7th Cir. 2015).

Defendants argue that Mr. Printup must designate corroborating medical evidence, such as a physician's diagnosis, or evidence that the need was "so obviously serious that even a lay person would easily recognize the necessity for physician treatment."  Dkt. 69 at 10–12.  Although Mr. Printup has not designated such evidence, he has provided his own sworn testimony that he suffered severe pain for at least a week, asked Nurse Cupp on multiple occasions to be evaluated and for pain reliever, and was not evaluated by medical staff or given any pain reliever during that time.  He described the pain he experienced during this time as "agonizing" and "excruciating."  Dkt. 2 at 17 ¶¶ 73–74; dkt. 90 at 4 ¶ 4.  And Mr. Printup attests that he asked Nurse Cupp on multiple occasions for pain medication, but she refused to give him any.  Dkt. 90 at 3–4; *see* dkt. 2 at 17 ¶¶ 71–75.

Crediting Mr. Printup's sworn statements, a reasonable jury could, without corroborating medical evidence as described by Defendants, find that

6

his shoulder pain constituted a serious medical need. See *Arnett*, 658 F.3d at 753; *Dobbey*, 806 F.3d at 941; *Orlowski v. Milwaukee County*, 872 F.3d 417, 423 (7th Cir. 2017). Although Mr. Printup's shoulder pain eventually subsided without medical intervention, dkt. 90 at 4 ¶ 6, a jury could still find that Mr. Printup experienced severe pain and that Nurse Cupp unnecessarily prolonged his pain and suffering. See *Williams v. Liefer*, 491 F.3d 710, 716 (7th Cir. 2007). A reasonable jury could also find from the designated evidence that Nurse Cupp was aware Mr. Printup was in serious pain due to his shoulder injury yet provided no treatment for it or medication to alleviate the pain. Dkt. 91 at 3; dkt. 90 at 3–4.

In sum, from Mr. Printup's designated evidence, a jury could reasonably find that Mr. Printup had a serious medical condition to which Nurse Cupp was deliberately indifferent. Defendants' motion for summary judgment as to Nurse Cupp is therefore **denied**.

    **B.**    **Centurion**

To prevail on a 42 U.S.C. § 1983 claim against a private entity acting under color of state law like Centurion, "a plaintiff must ultimately prove three elements: (1) an action pursuant to a [corporate] policy, (2) culpability, meaning that policymakers were deliberately indifferent to a known risk that the policy would lead to constitutional violations, and (3) causation, meaning the [company] action was the 'moving force' behind the constitutional injury." *Hall v. City of Chicago*, 953 F.3d 945, 950 (7th Cir. 2020); see generally *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

Unless the unconstitutional results of the private entity's actions were "patently obvious," the plaintiff "must prove a prior pattern of similar constitutional violations resulting from the policy." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 236 (7th Cir. 2021). "To establish deliberate indifference to the purportedly unconstitutional effects of a widespread practice, [a plaintiff] must point to other inmates injured by that practice." *Stockton v. Milwaukee County*, 44 F.4th 605, 617 (7th Cir. 2022).

Mr. Printup alleges that Centurion maintains a "widespread policy of denying medical care to inmates in the SCU after they submit [healthcare request] forms" and "allowing their employees to ignore and disregard or throw away inmates on the SCU [healthcare request] forms." Dkt. 2 at 6–7. However, he has not presented any evidence from which a jury could find that Centurion maintains any such policy or widespread practice.

On the contrary, Mr. Printup's medical records show that he repeatedly received medical attention while he was housed at Wabash Valley's SCU. Dkt. 68-2 (documenting 12 medical visits and treatment for a variety of reported ailments from July 2021 through September 2022). And Mr. Printup himself reports additional diagnostic measures not included in the medical records. Dkt. 90 at 5.

Mr. Printup designates Rafael Walker's medical forms and affidavit as well. Dkt. 90 at 8; *see* dkt. 54 at 5–22. Mr. Walker testifies that Mr. Printup failed to receive medical attention for a couple hours after falling and hitting his head on July 8, 2021. Dkt. 54 at 5. Mr. Walker's medical records indicate

8

that he received a medical response when he made his requests. Dkt. 54 at 6–7 (x-rays ordered and doctor's visit scheduled); *id.* at 8–9 (x-rays ordered); *id.* at 10–17 (referred to doctor); *id.* at 22 (x-rays obtained, no injury noted, 3-day order for Tylenol given, follow up appointment made). Additionally, Mr. Printup has designated evidence that he requested healthcare from Nurse Cupp two times related to the May 12, 2022 incident. *See* dkt. 91 at 42; dkt. 90 at 3–4. But this evidence amounts, at most, to "[i]solated acts of individual employees," and "something more is required to establish a widespread custom or practice for *Monell* liability." *Reck v. Wexford Health Sources, Inc.*, 27 F.4th 473, 488 (7th Cir. 2022). Accordingly, Centurion is entitled to summary judgment.

### IV. Conclusion and Further Proceedings

The Medical Defendants' motion for summary judgment, dkt. [67], is **GRANTED** as to Mr. Printup's claim against Centurion and **DENIED** as to his claim against Nurse Cupp. This claim will be resolved by settlement or trial.

The **clerk is directed** to terminate Centurion as a defendant on the docket.

The **clerk is directed** to send Mr. Printup a form motion for assistance with recruiting counsel. Mr. Printup shall have **21 days following the issuance of this Order** to file either a motion for assistance with recruiting counsel or a notice informing the Court that he intends to represent himself for the remainder of the case.

**SO ORDERED.**

Date: 9/17/2024

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

9

Distribution:

All ECF-registered counsel of record via email

DARIUS PRINTUP
280904
WESTVILLE – CF
WESTVILLE CORRECTIONAL FACILITY
Electronic Service Participant – Court Only